1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHASTA LINEN SUPPLY, INC.,

          Plaintiff,

   v.

APPLIED UNDERWRITERS INC., et al.,

          Defendants.

No.  2:16-cv-00158 WBS AC

ORDER

PET FOOD EXPRESS LTD., et al.,

          Plaintiffs,

   v.

APPLIED UNDERWRITERS, INC., et al.,

          Defendants.

No. 2:16-cv-01211 WBS AC

      These two putative class actions, Pet Food Express Ltd. v. Applied Underwriters Inc., et

al, 16-cv-01211 WBS AC ("Pet Food") and Shasta Linen Supply, Inc. v. Applied Underwriters, et

al., 16-cv-00158-WBS-AC ("Shasta") were consolidated for pre-trial purposes and set to the same

pre-trial schedule.  Shasta at ECF No. 59 at 2-4.  This matter is before the court on defendants'

1

motion for a protective order.  Pet Food at ECF No. 75, Shasta at ECF No. 78.  This discovery

motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(1).  For simplicity and

because the motions are identical, unless otherwise noted, the court will reference the filings in

the Pet Food case.

Plaintiffs and defendants appeared at a hearing on January 10, 2018 at 10:00 a.m.  For the

reasons stated below, the court GRANTS defendants' motion in part and DENIES it in part.

## I.    Relevant Background

On January 26, 2016, the Shasta Linen case was filed as a putative class action "seeking

restitution/disgorgement for Plaintiff and the putative class as a result of Defendants' unlawful

business practices, including the use of an unfiled, void and illegal 'collateral agreement' in the

collection of excessive fees and expenses for the workers' compensation insurance arrangements

between Defendants and Plaintiffs."  Shasta ECF No. 1 at 2.  The Pet Food case, also filed as a

putative class action and making similar allegations, was removed to this court from Alameda

Superior Court on March 29, 2016.  Pet Food ECF No. 1.

On November 7, 2016, the parties submitted a joint status report in which defendants

argued that the court should bifurcate class and merits discovery.  ECF No. 38 at 12.  The matter

was fully briefed by both sides.  ECF No. 38.  On November 14, 2016, the Honorable Judge

William B. Shubb issued a scheduling order in which he declined to bifurcate class and merits

discovery.  ECF No. 41 at 3.  Judge Shubb ordered that defendants "may seek a protective order

before the assigned magistrate judge if they believe plaintiff is propounding discovery not

reasonably tied to class issues."  Id.  On July 6, 2017, pursuant to the parties' stipulation, the

related actions were consolidated for pre-trial purposes.  Shasta at ECF No. 58.

## II.    Motion

Defendants ask for a protective order regarding a number of requests for production

("RFPs") and Interrogatories to which they have common objections.  ECF No. 83.  Defendants

seek protection from discovery as follows:

- Interrogatory No. 1, RFP Nos. 6, 8, 19, 25:  Disputing the "degree to which Plaintiffs may

  seek discovery into the programs of absent class members."  ECF No. 83 at 10;

2

- As to all pending discovery requests:  Whether plaintiffs' may demand that discovery responses include "SolutionOne" program related responses or if production/responses must be limited to the EquityComp Program.  Id. at 23;

- RFP Nos. 30, 31, 33, 34:  Whether plaintiffs are entitled to documents regarding regulatory filings in states other than California.  Id. at 25;

- RFP No. 34:  Whether, in response to Request No. 34, Defendants must produce documents concerning the submission of the RPA in 2016 to the California Department of Insurance, even though the form RPA was not the same form at issue in this case and the documents were submitted after Defendants and the California Department of Insurance already were in a dispute about the RPA's legality.  Id. at 31;

- RFP No. 8:  Whether plaintiffs are entitled to segregated cell account information.  Id. at 34; and

- RFP No. 10: Whether plaintiffs are entitled to documents reflecting defendants' total revenues.  Id. at 36.

### III.    Analysis

A. Legal Standard

Under the Federal Rules of Civil Procedure, the method available to limit the breadth or use of a discovery request is a motion for a protective order under Fed. R. Civ. P. 26(c).  This rule states in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.] The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed. R. Civ. P. 26(c).  Options available to the court include, in part, "forbidding the disclosure or discovery; [ ] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Id.  District courts have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted.  Seattle Times

3

Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211–12 (9th Cir.2002). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. In re Roman Catholic Archbishop of Portland in Or., 661 F.3d 417, 424 (9th Cir.2011) (citing Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir.2003)).

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1). The current Rule states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevance to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

Relevance, however, does not establish discoverability; in 2015, a proportionality requirement was added to Rule 26. "Under the amended Rule 26, relevancy alone is no longer sufficient . . . the discovery requested must also be proportional to the needs of the case." Martin v. Sysco Corp., No. 1:16-cv-00990-DAD-SAB, 2017 WL 4517819, at *2 (E.D. Cal. Oct. 10, 2017).

Discovery in the class action context can be particularly complex. To proceed with a class action, the Ninth Circuit has held that a plaintiff bears the burden of either making a prima facie showing that Federal Rule of Civil Procedure 23 class action requirements are satisfied or that

4

discovery is likely to produce substantiation of the class allegations. Manolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985). To make a prima facie showing under Rule 23(a), a plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation. Plaintiff must show "(1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class." Ogden v. Bumble Bee Foods, LLC, 292 F.R.D. 620, 622 (N.D. Cal. 2013) (internal punctuation and citation omitted).

In a putative class action, it is within a court's discretion to set either a bifurcated discovery schedule (creating separate "pre-certification discovery" and "class discovery" deadlines) or non-bifurcated discovery schedule. See Mbazomo v. ETourandTravel, Inc., No. 2:16-CV-02229-SB, 2017 WL 2346981, at *2 (E.D. Cal. May 30, 2017). In bifurcated discovery, pre-certification discovery is generally initially limited to "certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class," Gusman v. Comcast Corp., 298 F.R.D. 592, 595 (S.D. Cal. 2014) (citing Oppenheimer Fund, 437 U.S. at 359). Even in the context of bifurcated discovery, the scope of pre-certification discovery lies entirely within the discretion of the court. Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009). "Especially when the material is in the possession of the defendant, the court should allow the plaintiff enough discovery to obtain evidence as to whether a class action is maintainable." Mora v. Zeta Interactive Corp., No. 1:16-cv-00198-DAD-SAB, 2017 WL 1187710, at *4 (E.D. Cal. Feb. 10, 2017) citing Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977). If a plaintiff cannot make an initial showing that the requirements of Fed. R. Civ. P. 26(a) can be met, the court may refuse to allow class discovery. Manolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985).

////

////

B.  Issue Analysis

    1.  Defendants are not entitled to discovery regarding absent class members

        (Interrogatory No. 1, RFP No. 6, 8, 19, 25).

Defendants' motion for a protective order with respect to Interrogatory No. 1 and RFP Nos. 6, 8, 19, 25 involves a dispute as to "the degree to which Plaintiffs may seek discovery into the programs of absent class members." ECF No. 83 at 10.  Defendants argue that plaintiffs' requests for discovery into information regarding absent class members is improper at this juncture because plaintiffs have not made a prima facie showing that they are entitled to this type of discovery before class certification, and that such discovery is not proportional to the issues in dispute.  ECF No. 83 at 10.  Defendants further contend that there are privacy concerns regarding production of the sensitive information of third parties.  Id. at 15.  Defendants also assert that during the meet and confer process, plaintiffs agreed that defendants could produce account documents for only the active plaintiffs and produce a summary chart for putative class members as a whole, but after the chart was produced, plaintiffs retracted their agreement to this compromise and demanded full productions.  Id. at 13-14.

Plaintiffs argue in response that any argument related to what discovery is relevant now, as opposed to later in the litigation, has been mooted by Judge Shubb's decision not to bifurcate discovery and, in fact, to allow class discovery.  Id. at 17.  Plaintiffs note that the contact information they seek does not implicate privacy concerns, and even if privacy concerns were at issue, such concerns are preemptively addressed by the stipulated protective order already in place.  Id. at 83, ECF Nos. 47, 48.  Finally, plaintiffs assert that, although they did agree to the compromise summary production referenced by defendants, they did so "without waiving the right to seek additional information at a later time[.]"  ECF No. 83 at 20-21, Plaintiff's Exhibit 1 at 1.

Plaintiffs are entitled to full class discovery at this juncture, including requested personal and contact information.  "In Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981), the Supreme Court held that class counsel in Rule 23 class actions must be permitted to communicate with potential class members prior to class certification for the purpose of notification and information

gathering.  Id. at 101-02.  Disclosure of contact information for putative class members is a common practice in the class action context."  Martin, 2017 WL 4517819, at *3.  Plaintiffs are correct that discovery is not bifurcated in this case, and Judge Shubb has already decided that plaintiffs are entitled to class discovery even before class certification has been adjudicated.  ECF No. 41 at 3.

In terms of proportionality, it is true that discovery must be proportional to the needs of the case.  Martin, No. 2017 WL 4517819, at *2.  At oral argument, defendants made the valid point that, even when discovery is not bifurcated, the court must consider proportionality when evaluating how much discovery burden and expense is justified prior to class certification.  However, in the protective order context, defendant has "the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result'" from requiring discovery responses.  In re Roman Catholic, 661 F.3d at 424.  Defendants have not articulated any "specific prejudice or harm" beyond general allegations of burden.  ECF No. 83 at 15.  Moreover, plaintiffs make a persuasive argument that the discovery sought into non-class members is not only relevant to both pre- and post-certification class issues.  Privacy concerns do not require an order protecting defendant from discovery, because confidential information is already protected from disclosure by the stipulated protective.  ECF No. 41.  For all these reasons, the court denies defendants' motion for a protective order with respect to this issue.

    2.  <u>Defendants are not entitled to a protective order with respect to "SolutionOne"</u>
        <u>documents.</u>

Defendants contend that plaintiffs' discovery requests should be limited to EquityComp documents, which was the program in which Shasta and Pet Food, the original named plaintiffs in this case, participated.  ECF No. 83 at 23.  Originally, because none of the plaintiffs participated in defendants' separate program known as SolutionOne, plaintiffs agreed to limit the production of documents to those related to EquityComp.  Id.  However, in June 2017, plaintiffs filed an amended complaint to add Alpha Polishing as a plaintiff.  Id., ECF No. 54.  Unlike the other plaintiffs, Alpha Polishing was a SolutionOne participant.  ECF No. 83 at 23.  Plaintiffs later demanded that all prior discovery responses be expanded to include SolutionOne.  Defendants

argue that inclusion of SolutionOne documents would improperly increase the discovery's scope and burden.

This dispute is moot. Plaintiff Alpha Polishing served separate Requests for Production and Interrogatories on Defendants that are identical to the requests served by Shasta and Pet Food Express. Id. at 25. The parties confirmed at hearing that defendants have complied with those requests. Even if the issue were not moot, defendants would not be entitled to a protective order with respect to SolutionOne documents. Defendants have articulated no reasons other than a general allegation of "burden" to justify the prevention of discovery as to SolutionOne. Further, plaintiffs did not make any binding or court-approved agreement to limit the scope of their requests. The protective order is denied as to this issue.

3. Defendants are entitled to a protective order regarding non-California regulatory filings (RFP Nos. 30, 31, 33, 34).

Defendants seek to prevent plaintiffs from obtaining discovery into various communications with regulators in states outside of California. ECF No. 83 at 31. Defendants argue that such discovery is overbroad and irrelevant because plaintiffs seek only to represent a California class. Id. at 30-31. Plaintiffs argue that discovery beyond California is relevant because the programs at issue are sold not only in California but in other states, and the programs sold in other states are apparently identical to the California programs. ECF No. 83 at 32. Plaintiffs assert that because defendants "are characterizing the exact same program to different state regulators" that plaintiffs are entitled to discovery on the non-California communications. Id. at 32-33.

Plaintiffs' argument is unpersuasive. Insurance law and regulation, including the definition of basic terms, varies so much from state to state that communications with non-California regulators are not the equivalent of communications regarding California compliance. Accordingly, any relevance is slight at most. While it is possible that defendants may have made purely factual representations to non-California regulators on issues related to the disputes between the parties, plaintiffs acknowledged at hearing that they have no specific factual basis for believing this to be so. Accordingly, to the extent the hypothetical information might have any

8

relevance, discovery is merely a fishing expedition.  Plaintiffs have not made a persuasive argument that such discovery would be of consequence in determining the outcome of this action or make any pertinent fact more or less probable.  FRE 401.  Allowing discovery on a subject of such speculative and tenuous relevance would be disproportionate to the needs of the case and would palace an undue burden on defendants.  The protective order is granted with respect to this issue.

4.  <u>Defendants are not entitled to a protective order regarding submission of the RPA in 2016 with the California Department of Insurance (RFP No. 34).</u>

Plaintiffs' seek discovery into a submission of the Reinsurance Participation Agreement ("RPA") in 2016 for approval by the California Department of Insurance ("CDI"), after the CDI and Defendants were already in a dispute about the RPA's legality.  Defendants contend this filing and the CDI's response have no potential relevance to any issue in this case because documents have no bearing on the RPA's legality or enforceability.  ECF No. 83 at 32.  Plaintiffs contend that because the 2016 RPA submission was rejected, there is an inference that if defendants had filed the RPA originally (as plaintiffs allege is required by the Insurance Code), then  "(1) it would have been rejected (as it was in 2016); (2) Defendants would not have sold it; (3) Plaintiffs would not have bought it; and, ipso facto, (4) Plaintiffs would not have paid Defendants the same amount as they did when Defendants sold them the illegal, unfiled, unfair, and fraudulent Program."  ECF No. 83 at 34.  Plaintiffs argue that the 2015 RPA is therefore relevant to their theory of the case and particularly defendants' previously asserted position that whether or not an RPA was filed, plaintiff would have incurred the same costs.  <u>Id.</u>

The court agrees with plaintiff that the 2016 RPA discovery is relevant.  The requested discovery appears calculated to lead to facts which will impact the claims and defenses in this case.  FRE 401.  Defendants have made no argument that production with respect to these documents would result in harm or prejudice, as is their burden.  <u>In re Roman Catholic</u>, 661 F.3d at 424.  The protective order with respect to this issue is denied.

////

////

5. <u>Defendants are not entitled to a protective order regarding segregated cell account information (RFP No. 8).</u>

Defendants assert that during their earlier meet and confer process, plaintiffs made no objection to the type of documents that defendants agreed to produce related to individual accounts. ECF No. 83 at 35. Defendants represent that plaintiffs notified defendants on December 7, 2017 that they meant to investigate how defendants account for money in segregated accounts, known as "cells." <u>Id.</u> at 36. Defendants describe this as another instance where plaintiffs "reframed the discovery in dispute at the last second." <u>Id.</u> Defendants do not object to producing records related to how defendants account for plaintiffs' segregated cells internally, and state that they would have produced them earlier if requested. <u>Id.</u> Plaintiffs argue that while they may have made earlier compromises to expedite responses in the discovery process, they did not make a binding agreement to limit their discovery. <u>Id.</u>

Defendant's request for a protective order is here premised solely on a "you changed what you wanted" theory, which the court finds unpersuasive in light of the fact that the close of discovery is a year in the future. ECF No. 59. Given the time remaining for discovery, plaintiff's changed position (if any) does not constitute the harm or burden necessary to support the remedy of a protective order. There is no substantive disagreement about discoverability, and in the absence of a court order or binding agreement limiting discovery, plaintiffs are within their rights to re-evaluate their needs during the discovery period and, finding that previously limited productions were insufficient, request that their RFPs be responded to in full. The protective order with respect to this issue is denied.

6. <u>Defendants are not entitled to a protective order with respect to documents reflecting total revenues (RFP No. 10).</u>

Defendants assert that plaintiffs should not be allowed discovery into their total revenues related to the EquityComp program, because total revenues have no relevance to any disputed issue in the case. ECF No. 83 at 37. Plaintiffs argue, among other things, that total revenues go to a central theory of their case: that defendants engaged in unfair and fraudulent business practices to "make hundreds of millions of dollars." <u>Id.</u> at 39. The court agrees with plaintiff.

Defendants' revenues are relevant to central themes of the case, whether or not they are directly relevant to the calculation of damages. Defendants have not pointed to any particular harm or burden that would result from having to divulge their revenues, which is their burden as the moving party. The protective order with respect to this issue is denied.

### IV.     Conclusion

Defendants' motion for a protective order is GRANTED with regard to discovery into non-California regulatory filings and communications (RFP Nos. 30, 31, 33, 34), and is OTHERWISE DENIED.

IT IS SO ORDERED.

DATED: January 12, 2018

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE