UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHASTA LINEN SUPPLY, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLIED UNDERWRITERS INC., et al., <br><br> Defendants. | No. 2:16-cv-00158 WBS AC <br><br><br> ORDER |
| PET FOOD EXPRESS LTD., et al., <br><br> Plaintiffs, <br><br> v. <br><br> APPLIED UNDERWRITERS, INC., et al., <br><br> Defendants. | No. 2:16-cv-01211 WBS AC |

Two related putative class actions, <u>Pet Food Express Ltd. v. Applied Underwriters Inc., et al</u>, 16-cv-01211 WBS AC ("<u>Pet Food</u>") and <u>Shasta Linen Supply, Inc. v. Applied Underwriters, et al.</u>, 16-cv-00158-WBS-AC ("<u>Shasta</u>") were consolidated for pre-trial purposes and set to the same pre-trial schedule. <u>Shasta</u> at ECF No. 59 at 2-4. These discovery motions were referred to the

1

magistrate judge pursuant to E.D. Cal. R. 302(c)(1).  This matter is before the court on the motion of defendants (referred to collectively as "Applied Underwriters") to compel responses to a third-party subpoena.  Pet Food, ECF No. 89, Shasta ECF No.  2:16-cv-00158.  For simplicity and because the motions are identical, unless otherwise noted, the citations herein are to filings in the Pet Food case.

Applied Underwriters and third-party Relation Insurance Services, Inc. ("Relation") participated in a hearing on June 13, 2018.  ECF No. 94.  Plaintiffs have no part in this motion.  For the reasons stated below, the court GRANTS Applied Underwriters' motion to compel.

## I.  Relevant Background

On January 26, 2016, the Shasta Linen case was filed as a putative class action "seeking restitution/disgorgement for Plaintiff and the putative class as a result of Defendants' unlawful business practices, including the use of an unfiled, void and illegal 'collateral agreement' in the collection of excessive fees and expenses for the workers' compensation insurance arrangements between Defendants and Plaintiffs."  Shasta ECF No. 1 at 2.  The Pet Food case, also filed as a putative class action and making similar allegations, was removed to this court from Alameda Superior Court on March 29, 2016.  Pet Food ECF No. 1.  A third-party, Relation, is the insurance broker that sold the policies at issue in both cases to the plaintiffs.  ECF No. 93 at 3.  As broker, Relation received a commission on the sales of the policies, which Applied Underwriters asserts amounted to roughly $400,000.  Id.

On November 7, 2016, the parties submitted a joint status report in which defendants argued that the court should bifurcate class and merits discovery.  ECF No. 38 at 12.  The matter was fully briefed by both sides.  ECF No. 38.  On November 14, 2016, the Honorable Judge William B. Shubb issued a scheduling order in which he declined to bifurcate class and merits discovery.  ECF No. 41 at 3.  On July 6, 2017, pursuant to the parties' stipulation, the related actions were consolidated for pre-trial purposes.  Shasta at ECF No. 58.  The parties have been engaging in ongoing discovery, and in February of 2018 Judge Shubb modified the case deadlines to extend the discovery cutoff to July 1, 2019.  ECF No. 88.  Motions related to class certification are due by July 18, 2018.  Id.

On January 12, 2018, Applied Underwriters sent a third-party subpoena to Relation seeking documents, information, or objections, or to permit inspection of the premises in the Pet Food case. ECF No. 93 at 2. On January 16, 2018, Applied Underwriters served a substantively identical subpoena upon Relation in the Shasta Linen case. Id. On January 26, 2018, Relation's counsel sent a letter to Applied Underwriters' counsel asserting objections to all of the document requests. Id at 2. On February 8, 2018, counsel participated in a phone conference to meet and confer regarding Relation's objections and contentions. Id. Counsel agreed to revisit the meet and confer process when Relation's counsel could provide further detail regarding the alleged burden of complying with the subpoenas, and when Applied Underwriters' counsel could provide further detail regarding the status of discovery among the litigants, specifically, electronically stored information ("ESI") discovery. Id.

On April 13, 2018, counsel participated in a follow-up meet and confer telephone conference. Id. Counsel continued to meet and confer regarding the parameters for an initial or staged production by Relation. Id. On April 18, 2018, counsel for Relation offered to make a limited production of documents, limiting categories of documents within date ranges of July 1, 2009-November 1, 2009, July 1, 2012-November 1, 2012, and July 1, 2015-November 1, 2015 for Pet Food, and July 1, 2010-November 1, 2010 for Shasta Linen, if Applied Underwriters agreed to pay for the costs of production. Id. at 2-3.

On April 25, 2018, counsel for Applied Underwriters responded to Relation's proposal and demanded full production in response to the subpoenas. Id. at 3. Applied Underwriters also disputed the demand that it should pay the cost of the production. Id. The parties were ultimately unable to reach a resolution, and Applied initiated this discovery motion in light of impending case management deadlines. Id.

**II. Motion**

Although not explicitly stated in the motion, Applied Underwriters asks the court to compel Relation to make full productions to the issued subpoenas at its own expense. See generally, ECF No. 93.

////

**III. Discussion**

A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 45 allows a party to a lawsuit to serve a subpoena that commands a non-party to "produce documents, electronically stored information, or tangible things . . ." Fed. R. Civ. P. 45(a)(1)(C). A court must modify or quash such a subpoena that fails to allow a reasonable time to comply, requires a person to travel more than 100 miles (except for trial within the state), requires disclosure of privileged or other protected materials, or subjects a person to undue burden. <u>See</u> Fed. R. Civ. P. 45(d)(3)(A) (i-iv). Rule 45 further provides that a court may modify or quash a subpoena when the subpoena, inter alia, requires the disclosure of a "trade secret or other confidential research, development, or commercial information." <u>See</u> Fed. R. Civ. P. 45(d)(3)(B).

The Federal Rules limit the scope of subpoenas by the relevance standards set forth in Federal Rule of Civil Procedure 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"), and the considerations of burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1). "In evaluating whether a subpoena is unduly burdensome, the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." <u>Wahoo Int'l, Inc. v. Phix Doctor, Inc.</u>, No. 13CV1395-GPC BLM, 2014 WL 3573400, at *2 (S.D. Cal. July 18, 2014) (internal citations omitted). Rule 26 also includes an explicit proportionality requirement; discovery must be proportional to the needs of the case. Fed. R. Civ. P. 26(1). Non-parties subject to a subpoena duces tecum "deserve extra protection from the courts." <u>High Tech Medical Instrumentation v. New Image Indus.</u>, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing <u>United States v. Columbia Broadcasting System</u>, 666 F.3d 364, 371-72 (9th Cir. 1982).

B. <u>Relation Must Produce Non-Privileged, Responsive Information</u>

The subpoenas issued by Applied Underwriters seek production of documents responsive to 18 separate requests for production. ECF Nos. 93-1, 93-2. The requests seek information related

to the insurance brokerage work Relation did for plaintiffs, and Relation's ultimate sale of Applied Underwriters' policy to both plaintiffs. Id. Applied Underwriters argues that the requests are relevant because plaintiff's complaints are based on the allegation that that they relied on Applied Underwriters' fraudulent statements in making their decision to purchase insurance. For example, in the Pet Food case, it is alleged that "[i]n reliance on the information provided by the Summary & Scenario and Proposal and [Applied Underwriters'] other misrepresentations and omissions in their uniform marketing materials (including that the Program was legal), Pet Food Express elected to enter the EquityComp Program for a three-year term effective October 1, 2009. Subsequently, without knowledge of the Program's illegality, Pet Food Express renewed the Program for an additional three-year term, and then a subsequent one-year term." ECF No. 54 at 22. Applied Underwriters argues that Relation's brokerage documents are relevant to the case because, insofar as plaintiffs allege they were misled, plaintiffs' general knowledge of the market and competitive products is relevant to Applied Underwriters' defense. ECF No. 88 at 4. The court agrees that the subpoenas fall within the bounds of Fed. R. Civ. P. 26(b)(1)'s relevancy requirement.

Relation makes two primary objections regarding responsive, non-privileged documents: (1) certain of the responsive documents are available from the parties themselves, and (2) certain of the documents contain proprietary, confidential, trade-secret information that would put it at a competitive disadvantage if disclosed. See ECF No. 93.

   1. Relation's Privacy Concerns are Adequately Addressed by the Existing Protective Order

Relation's argument that the subpoenas request documents which would reveal its confidential, proprietary information does not protect it from compliance. The protective order issued in this case addresses such concerns. ECF Nos. 47, 48. The only case Relation relies on to support its contention that a broker's work for a client is protected for privacy reasons, Tucker v. Am. Int'l Grp., Inc., 281 F.R.D. 85, 97 (D. Conn. 2012), is not on point. In Tucker, a plaintiff sought personal inspection of her former employer's insurance broker's records after the broker had made multiple productions in response to a third-party subpoena which plaintiff believed

were incomplete. Id. Although the court in Tucker did acknowledge the broker's privacy concerns, it was only in passing; the primary concern of the Tucker court was overbreadth and the speculative nature of the requests. Id. at 93-97. Privacy concerns arose at least in part because rather than seeking a production, plaintiff sought to personally inspect the broker's full records. Id. The Tucker case presented an entirely different situation from the one at issue here.

Similarly, Relation has not demonstrated that disclosure of the requested information in this case will place it at a competitive disadvantage. Relation is correct that "a subpoena is subject to being quashed or modified if, among other things, it . . . requires 'disclosing a trade secret or other confidential, research, development, or commercial information.' Fed. R. Civ. P. 45(c)(3)(B)(i)." Cohen v. City of New York, 255 F.R.D. 110, 117 (S.D.N.Y. 2008). In Cohen, a case which Reliance cites to support its position, the court identified sets of circumstances in which the privacy of sensitive business information is of concern in response to a subpoena. The Cohen court stated: "[t]he most common situation is that in which the producing party is able to demonstrate that the dissemination of confidential information will place it at a competitive disadvantage." Id. at 118. In such cases, the information "can generally be protected by a protective order limiting the purposes for which the information can be used and the extent to which it can be disseminated." Id. Relation admits that it falls into this category, and provides no argument as to why it falls outside the general rule that a protective order resolves its confidentiality concern. ECF No. 88 at 11. The protective order in this case appears to contemplate protection for non-party productions. See, e.g., ECF No. 47 at ¶ 2.1. To the extent Relation feels that the existing protective order does not adequately protect its interests, the parties are free to negotiate a separate or supplemental protective order. In any case, a protective order can adequately address Relation's privacy concerns.

Finally, Relation misses the mark in arguing that the subpoenas functionally convert it into an unpaid expert. Relation cites Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 814 (9th Cir. 2003), for the proposition that a request for information on the market at issue is equivalent to a request for expert testimony. ECF No. 88 at 11. This is a misreading of the holding in Mattel. In that case, the expert testimony theory was one of the many arguments a

6

third party made in moving to quash a subpoena; the Ninth Circuit held only that the "district court did not abuse its discretion by quashing Mattel's subpoena, and its factual findings do not display clear error." Mattel, 353 F.3d at 814. Even if the Ninth Circuit had endorsed the third party's theory, the facts of Mattel are distinguishable from the case at bar. In Mattel, the defendant served upon the plaintiff an expert report by a professor at an art institute. Id. at 792. The plaintiff then served a third-party subpoena on the art institute that employed the defendant's expert. Id. Unlike the art institute in Mattel, Relation provided a service to the plaintiffs in these cases, and the information sought by Applied Underwriters directly connects to that service relationship. There is no real indication that, in this case, Relation's production would render it an uncompensated expert.

2. Applied Underwriters' Subpoenas Are Not Premature

Relation's second argument, that many of the documents sought from Relation are obtainable from plaintiffs, fails in light of the circumstances of this case. ECF No. 93 at 6. Relation is correct that when documents are in the possession of both the opposing party and a non-party, the first request should be to the opposing party. However, Relation cites no bright-line rule that party discovery must be complete before a third-party subpoena would be appropriate, and the court is aware of no such rule. Relation's citation to Soto v. Castlerock Farming & Transp., Inc. is on point, but ultimately does not support its argument. 282 F.R.D. 492, 505 (E.D. Cal. 2012). In Soto, the court noted that "[i]n general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." Id. There, the subpoenaing party first sought documents from the opposing party, who largely refused to produce responsive documents. Id. The Soto court found that this attempt established the subpoenaing party's need to obtain the documents from the third party. Id.

Here, Applied Underwriters sought discovery from plaintiffs in this case, and found that their productions had gaps which Applied Underwriters believes would be filled by the production from Relation. ECF No. 88 at 8. Relation cites no law that indicates Applied Underwriters' attempts were insufficient, or that party discovery must be somehow final before it can be required to produce documents. Applied Underwriters also argued at hearing that metadata

7

associated with Relation's copy of documents may be important to its arguments; the court finds this reasoning persuasive. Because Applied Underwriters has attempted to get responsive documents from plaintiffs and retains a belief that Relation has additional responsive documents in its possession, and because Relation's copy of documents may include discoverable metadata unique to their version of the document, Applied Underwrites has demonstrated a need to obtain the documents from Relation and the third-party subpoenas are not premature.

C. <u>Relation Must Bear The Costs Of Production</u>

Relation must produce non-privileged documents responsive to Applied Underwriters' subpoenas, and pay the full costs of production. Federal Rule of Civil Procedure 45(d)(2)(B)(ii) states that when a court issues an order compelling production in response to a subpoena, the order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." The Ninth Circuit has referred to this as a "cost shifting" provision. <u>Legal Voice v. Stormans Inc.</u>, 738 F.3d 1178, 1184 (9th Cir. 2013). The Ninth Circuit's analysis in <u>Stormans</u> leaves no doubt as to the rule of law in this Circuit on this topic: "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." <u>Id.</u> The Ninth Circuit clarified by stating that "when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party. If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder "non-significant." <u>Id.</u>

Relation asserts that, following a preliminary review of its electronic systems and employees to identify relevant custodians and evaluate the scope of work, compliance with Applied Underwriters' subpoenas would cost it approximately $15,000. ECF No. 88 at 13-14. Applied Underwriters' response is that $15,000 is not a "significant" cost of compliance because Relation made over $400,000 in commissions over the years from sales to plaintiffs, and $15,000 is less than 4% of $400,000. <u>Id.</u> at 13. To support his argument, Applied Underwriters notes that on remand in <u>Stormans</u>, the district court used similar logic to justify splitting the costs between the non-party and the requesting party. <u>Stormans Inc. v. Selecky</u>, No. C07-5374 RBL, 2015 WL

224914, at *7 (W.D. Wash. Jan. 15, 2015) (stating that because a third-party non-profit received over $700,000 in contributions in one year it was "capable" of paying some of its own expenses.). District Courts in California have held that, in determining whether an amount is "significant" to support cost shifting, "courts look to the nonparty's financial ability to bear the costs of production." In re Subpoenas to Intel Corp., No. 4:17-MC-80159-KAW, 2018 WL 1035794, at *6 (N.D. Cal. Feb. 23, 2018) (quoting Balfour Beatty Infrastructure, Inc. v. PB & A, Inc., 319 F.R.D. 277, 281 (N.D. Cal. 2017). "Courts also consider whether the nonparty has an interest in the outcome of the underlying case." Balfour Beatty Infrastructure, 319 F.R.D. at 281

In the context of this case, $15,000 is not a "significant" cost such that fee shifting is appropriate. Relation did not provide the court with any information indicating that $15,000 is significant with respect to its total value as a company. Nor did Relation provide any information regarding it gross revenues. Although Relation stated at the hearing that Applied Underwriters' $400,000 figure was likely high, it did not provide an alternative figure, and in any case, Applied Underwrites has represented that $15,000 is a small fraction of what it personally paid Relation in commissions over the years. ECF No. 88 at 13. This, along with Relation's statement at hearing that Relation is a national company with multiple offices, indicates Relation has the financial ability to bear the costs of production. Id.

Additionally, while Relation may not have a personal interest in the outcome of plaintiffs' cases, Relation did have an interest in the transactions at issue in those cases by operating as plaintiffs' agent, and could reasonably have expected litigation expenses to arise from those transactions. Balfour Beatty Infrastructure, 319 F.R.D. at 281 (citing Tutor–Saliba Corp. v. United States, 32 Fed.Cl. 609, 610, nt. 5 (1995) for the proposition that a party substantially involved in an underlying transaction can anticipate its involvement may spawn litigation expenses). In fact, Relation stated at the hearing that it is involved in other disputes based on its work selling Applied Underwriters policies. Fee shifting is not appropriate here because Relation, while a third party, had a business relationship with the parties that renders it "interested" for the purposes of determining production cost allocation.

////

**IV.    Conclusion**

Defendant's motion to compel responses to subpoenas by third-party Relation Insurance Services, Inc. is GRANTED.  Relation shall bear the cost of production.

DATED: June 13, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE