UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHASTA LINEN SUPPLY, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED UNDERWRITERS, INC.; APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC.; CALIFORNIA INSURANCE COMPANY; and APPLIED RISK SERVICES, INC.,<br><br>Defendants. | No. 2:16-cv-158 WBS AC |
| PET FOOD EXPRESS LTD, and ALPHA POLISHING, INC. d/b/a GENERAL PLATING CO., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLIED UNERWRITERS, INC.; APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC.; CALIFORNIA INSURANCE COMPANY, | No. 2:16-cv-1211 WBS AC<br><br>MEMORANDUM AND ORDER |

1

| | |
|---|---|
| INC., and APPLIED RISK SERVICES, INC., | |
| Defendants. | |

----oo0oo----

Plaintiffs Shasta Linen Supply, ("Shasta"); Pet Food Express, Ltd. ("Pet Food"); and Alpha Polishing initiated these actions against Applied Underwriters, Inc. ("Applied"); Applied Underwriters Captive Risk Assurance, Inc. ("AUCRA"); Applied Risk Services, Inc. ("ARS") and California Insurance Company, Inc. ("CIC"), alleging that defendants fraudulently marketed and sold workers' compensation insurance to California employers in violation of state and federal law. Before the court is plaintiffs' Motion for Class Certification. (Shasta Docket No. 93; Pet Food Docket No. 101.) Defendants have also filed a Motion to Strike Plaintiffs' Reply Memorandum. (Shasta Docket No. 111; Pet Food Docket No. 112.) Both plaintiffs and defendants Request to Seal Documents and Redact Filings related to the Motion for Class Certification. (Shasta Docket Nos. 95, 100, 106 & 110; Pet Food Docket Nos. 103, 107 & 111.)

I. Factual and Procedural Background

California requires that all employers purchase workers' compensation insurance coverage for employees that suffer injury due to an occupational accident. (Shasta Second Amended Compl. ("SSAC") ¶ 3(Shasta Docket No. 56); Pet Food Amended Compl. ("PFAC") ¶ 3 (Pet Food Docket No. 54).) The California Insurance Code also requires that all workers' compensation insurance policy forms, rates, and rating plans be

filed for approval with the California Workers Compensation Insurance Rating Bureau ("the Bureau") and approved by the California Department of Insurance. (SSAC ¶ 22; PFAC ¶ 23; see also California Insurance Code §§ 11658, 11735.)

Defendants allegedly marketed and sold a workers' compensation program under the names EquityComp and SolutionOne (collectively "the program") to plaintiffs and other California employers. (SSAC ¶ 29; PFAC ¶ 30.) Defendants filed this policy with the Bureau and received approval from the Department of Insurance (SSAC ¶ 30; PFAC ¶ 31.) After the program's policies took effect for the plaintiffs, defendants allegedly required plaintiffs to sign a Reinsurance Participation Agreement ("RPA"). (SSAC ¶¶ 28, 43; PFAC ¶¶ 29, 44.)

Plaintiffs allege that the RPA modified the terms of the existing insurance policies, including the rates, causing plaintiffs to incur significantly higher costs for the program than defendants had marketed. (SSAC ¶ 87; PFAC ¶ 91.) Plaintiffs contend that defendants used the RPA to charge excessive rates and additional fees to the program participants. Plaintiffs further allege that defendants deliberately misrepresented the costs of the program in their marketing materials to induce plaintiffs to rely on those costs and purchase the program. (SSAC ¶¶ 2, 5, 7; PFAC ¶¶ 2, 5, 7.)

On August 29, 2014, Shasta filed an administrative appeal with the California Department of Insurance, challenging, among other things, the legality of the RPA. (SSAC ¶ 8, Ex. A, Comm'r's Order.) Shasta argued that the RPA was void as a matter of law because defendants did not file the RPA with the

Commissioner of the California Department of Insurance ("the Commissioner") thirty days prior to when it was to take effect, as required by California Insurance Code § 11735. (Id. at 2.)

On January 26, 2016, Shasta brought an action in this court alleging fraud and unfair competition against defendants for their marketing and sale of the program and RPA. (Shasta Compl. (Shasta Docket No. 1)ardif.) With respect to the RPA, Shasta argued that the RPA was void because it violates three different provisions of California law. First, Shasta maintained that defendants did not comply with California Insurance Code § 11735, making the same argument it did in front of the Commissioner. (Id. ¶ 3.) Second, Shasta contended that defendants violated California Insurance Code § 11658 by issuing a workers' compensation policy that was not properly filed with the Bureau and approved of by the Commissioner. (Id. ¶ 46.) Third, Shasta argued that the program violated California Insurance Code § 381 because the unfiled RPA determined the rates of the premium. (Id. ¶ 44.) Shasta further argued that billing plaintiff under the void RPA constituted fraud and was an unfair business practice. (Id. ¶ 4.) Defendants moved to dismiss the complaint to the extent it relied on § 11735, arguing that a rate is legal unless and until the Commissioner holds a hearing and disapproves the rate, pursuant to § 11737. (Defs.' June 13, 2016 Mot. to Dismiss at 6 (Shasta Docket No. 17).)

On June 20, 2016, the court granted defendants' motion to dismiss to the extent Shasta relied on § 11735, stating that "a rate that has not been filed as required by § 11735 is not an unlawful rate unless and until the Commissioner conducts a

4

hearing and disapproves the rate." (June 20, 2016 Order ("June 20 Order") at 4 (Shasta Docket No. 30).) Because Shasta had not alleged that the Commissioner had held a hearing and disapproved the RPA, the court concluded that plaintiff did not plausibly allege that the RPA was void. (Id.)

On the same day as the court's order of dismissal, the Commissioner issued a Decision and Order in Shasta's administrative case, holding that the RPA must be filed and approved by the Commissioner pursuant to § 11735 before use. (SSAC ¶ 8, Ex. A, Comm'r's Order.) Because defendants did not file the RPA before it took effect, the Commissioner stated, the "RPA is void as a matter of law." (Id.) Based on the Commissioner's Order, Shasta filed a motion for reconsideration of the June 20 Order granting the motion to dismiss. (Shasta Docket No. 33.) The court denied Shasta's motion for reconsideration, holding that the Commissioner's Order did not control this court and that the court's previous June 20 Order was not clearly erroneous. (Mem. and Order Re: Mot. for Recons. (Shasta Docket No. 47).)

Pet Food filed a separate class action against defendants in state court asserting claims for unfair competition, rescission, declaratory relief, and fraud. The action was removed to federal court on March 29, 2016. (Pet Food Docket No. 1.) Defendants, as they had in the Shasta case, moved to dismiss the Pet Food complaint to the extent it sought to invalidate the RPA because it is an unfiled rate or rating plan in violation of § 11735. (Pet Food Docket No. 15.) The court denied defendants' motion to dismiss as moot because Pet Food's

complaint did not rely on § 11735. (Order Re: Mot. to Dismiss (Pet Food Docket No. 35).)

On June 21, 2017, plaintiffs in both actions filed amended complaints that are nearly identical. The complaints asserted claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962; under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200[1]; and for quasi-contract. On July 6, 2017, the court entered an order consolidating the actions for pre-trial purposes. (Shasta Docket 2:16-158 No. 59; Pet Food Docket 2:16-1211 No. 58.)

Defendants subsequently filed a motion to dismiss. (Shasta Docket No. 62; Pet Food Docket No. 61.) The court granted the motion to dismiss as to plaintiffs' RICO claims and as to plaintiffs' attempts to invalidate the RPA on the theory that defendants violated Insurance Code § 11735. (Mem. and Order Re: Defs.' Mot. to Dismiss at 24 (Shasta Docket No. 66; Pet Food Docket No. 65.) With respect to plaintiffs' UCL claim based on Insurance Code § 11735, the court reaffirmed its position that an unfiled rate is not unlawful per se and determined that the Commissioner did not conduct a formal rate disapproval hearing. (Id. at 20-22.) The court denied the motion to dismiss in all other respects. (Id. at 24.)

Now plaintiffs move to certify a class pursuant to

---

[1] The UCL proscribes unfair competition, including any unlawful, unfair, or fraudulent business practices. Plaintiffs' amended complaints allege that defendants' conduct violated all three prongs of the UCL. As to their theory of liability under the unlawful prong, plaintiffs allege violations of the same Insurance Code provisions identified above.

Federal Rules of Civil Procedure 23(a) and 23(b)(3) ("Rule(s) 23(a) and 23(b)(3)").  Plaintiffs' proposed class consists of:

> All California participants of Defendants' EquityComp or SolutionOne single risk workers' compensation insurance Program from the inception of the Program to the present time and who paid monies or were billed and/or charged pursuant to a Reinsurance Participation Agreement (the "Class").

Plaintiffs seek appointment of Shasta Linen Supply, Inc., Alpha Polishing, Inc. D/B/A General Plating Co., and Pet Food Express Ltd. as class representatives.  Plaintiffs further seek appointment of Berger Montague PC[2]; Cummings and Page, LLP; Farmer Smith & Lane, LLP; and Law Offices of John Douglas Moore as class counsel.  Plaintiffs seek to certify all their remaining claims.

II. <u>Motion for Class Certification</u>

    A.    <u>Legal Standard</u>

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 348 (2011) (internal quotation marks and citation omitted). Consequently, a class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and fits within one of the three subdivisions of Rule 23(b). Fed. R. Civ. P. 23(a)-(b).  "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." <u>Dukes</u>, 564 U.S. at

---

[2] After filing this motion, plaintiffs' counsel filed a Notice of Firm Name and Address Change (Shasta Docket No. 102; Pet Food Docket No. 104), indicating that the firm's name changed from "Berger & Montague, P.C." to "Berger Montague PC."

7

350.  Certification is proper only if the trial court is convinced, after a rigorous analysis, that the necessary prerequisites have been satisfied.  See id. at 350-51 (internal citations omitted).  The court may consider the merits of plaintiffs' underlying claims only to the extent they are relevant to determining whether the prerequisites for class certification are satisfied.  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013) (citation omitted).

  B. Superiority

    Plaintiffs seek certification under Rule 23(b)(3), which requires in part "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  It sets forth four non-exhaustive factors in determining "superiority": (1) the class members' interests in individually controlling the litigation; (2) the extent and nature of any litigation concerning the controversy already begun by class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in managing a class action.  Id.  "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant."  Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 713 (9th Cir. 2010) (internal quotation marks and citations omitted).

    1. Interest in Individually Controlling Litigation

    The superiority requirement requires that a class action be the most efficient and effective means of resolving the

controversy. Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). The Supreme Court and Ninth Circuit have stressed that the benefits of class actions are best realized where the likely recovery is too small to incentivize individual lawsuits. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997))); see also Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190-91 (9th Cir. 2001). Accordingly, "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." Zinser, 253 F.3d at 1190.

Defendants state, and plaintiffs do not dispute, that the individual damages at stake in this litigation are large. Plaintiffs also have not put forth any evidence that any putative class member would be unable to bring an action absent class certification. In fact, the policies at issue are targeted at large companies and these potential plaintiffs agreed to pay hundreds of thousands of dollars annually in premiums. (See Decl. of Glen Abramson ("Abramson Decl.") Ex. 7, In the Matter of Shasta Linen Supply, Inc., California Insurance Commissioner Decision & Order at 8-9 (Shasta Docket No. 94-2; Pet Food Docket No. 102-3).) Furthermore, as the court explains later in this Order, these putative class members have filed a substantial number of actions related to this litigation and businesses are the plaintiffs in every single one.

Therefore, contrary to plaintiffs' arguments otherwise, this factor weighs against class certification. In Amchem, the Supreme Court observed that in including the superiority requirement the Advisory Committee was "[s]ensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other." 521 U.S. at 615. The Court further noted that the value of each member's claims affects the balance between these two competing considerations. Where the stakes are high and each potential class member can take care of itself, the interest in individual control increases. See id. at 616. Given the monetary incentive and each putative class member's presumed ability to bring its own action, this factor weighs against a finding of superiority. See Nguyen v. BDO Seidman, LLP, No. SACV-07-01352-JVS, 2009 WL 7742532, at *8 (C.D. Cal. July 6, 2009) (reaching a similar conclusion).

2. Other Pending Litigation

The second factor examines the extent and nature of any ongoing litigation concerning the controversy already commenced by or against members of the class. Fed. R. Civ. P. 23(b)(3)(B). This factor is intended to serve the judicial economy by reducing the risk of inconsistent adjudications with already pending lawsuits. Zinser, 253 F.3d at 1191 (citation omitted). If the court finds that several other actions are pending and that a threat of inconsistent adjudications exist, a class action may not be appropriate. Id. This inquiry also intersects with the one under the first prong. The existence of ongoing litigation indicates that some parties may have decided that individual

actions are an acceptable way to proceed and may consider them preferable to a class action. Id.

Defense counsel alone represents Applied in over 100 separate arbitrations, lawsuits, and California Department Insurance appeals involving 67 California participants in the program. (See Decl. of Jeanette T. Barzelay ("Barzelay Decl.") ¶¶ 2-6 & App'x A (summarizing existing proceedings) (Shasta Docket No. 105-3; Pet Food Docket No. 106-3); Decl. of Spencer Y. Kook ("Kook Decl.") ¶¶ 1-111 (extensively detailing pending matters) (Shasta Docket No. 105-2; Pet Food Docket No. 106-2).) Proceedings against defendants are located throughout the state with, for example, a state court lawsuit in San Diego and this federal court action in Sacramento. The issue(s) in these matters differ from each other in many respects. Some plaintiffs have brought as few as one claim and merely seek refund of money paid. Other plaintiffs have brought multiple claims and ask that courts enforce various parts of their agreements with defendants. Lastly, the procedural posture in these actions varies significantly. Some matters have already concluded, others are on appeal, and a few, like this one, have not even proceeded to trial yet.

Plaintiffs maintain, however, that these other actions should not weigh against a finding of superiority because there remain hundreds of California businesses that were harmed by defendants' conduct that have not instituted individual actions. (See also Mem. in Support of Mot. for Class Certification ("Defendants' records show that between December 2007 and 2016, Applied sold more than 800 three-year Programs to hundreds of

distinct employers in California.") (Shasta Docket No. 93-2); Pet Food Docket No. 101-3).)  In their view, it would be more efficient for the court to resolve all common issues in one action and avoid the risk of inconsistent judgments.

At the very least, the court finds that these individual actions are evidence that a substantial number of putative class members have an interest in controlling their own litigation. Zinser, 253 F.3d at 1191; see also Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590, 624 (C.D. Cal. 2015) ("[O]ther pending litigation is evidence that individuals have an interest in controlling their own litigation." (internal quotation marks omitted) (quoting 2 Newberg on Class Actions § 4:70 (5th ed.)).  This evidence also shows that putative class members have different preferences when it comes to an appropriate forum and the type of claims that they would like to bring.

One attorney, Larry Lichtenegger, who has filed 43 of the actions, expressed his concerns with a class action when he told a state court judge that each of his insured clients wanted to pursue a different approach due to their different desires. (See Decl. of Shand Stephens Ex. 39, June 15, 2018 Tr., PE Facility Sols., LLC v. Applied Underwriters, Inc., Case No. 37-2017-00050076 (San Diego Super. Ct.), at 9:28-10:16 (Shasta Docket No. 105-1; Pet Food Docket No. 106-1).)  For example, he indicated that some clients "don't want to press for illegality, they want to press for enforcement of the contract because they get greater defense by enforcing it rather than declaring it to be illegal." (See id.)  That interest is almost entirely

12

divergent with the interests of plaintiffs in this lawsuit and only strengthens the conclusion that individual actions are preferable to class litigation.

To the extent plaintiffs believe that class certification will reduce the possibility of inconsistent judgments, that risk already exists. A significant number of actions are pending and many allege similar claims (see Barzelay Decl. ¶¶ 2-6 & App'x A; Kook Decl. ¶¶ 1-111), meaning that there exists a realistic threat of multiplicity. See Zinser, 253 F.3d at 1191. Moreover, the court is not persuaded that the denial of class certification will result in hundreds of other employers flocking to file lawsuits. As plaintiffs concede in their reply, enough time has elapsed since the underlying events have occurred that it appears that the remaining putative class members have not expressed an interest in filing separate actions. (See Reply in Support of Mot. for Class Certification at 37–38 (Shasta Docket No. 109; Pet Food Docket No. 110).)

It is also certainly possible, as defendants argue, that many participants do not feel the need to file a lawsuit because they paid less money in premiums under the program than they would have if they had purchased guaranteed cost policies. (See Abramson Decl. Ex. 3, Supp. Response to Special Interrogatory 1(f) (Shasta Docket No. 94-1; Pet Food Docket No. 102-2).) Even if every putative class member would still be entitled to restitution, many program participants could view a lawsuit as unnecessary given these savings. Where putative class members are differently situated as to this willingness to litigate, it would be superior to leave the decision to prosecute

any action to the individual participants in the program.

Plaintiffs' reliance on the Ninth Circuit's decision in Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) is also misplaced. Plaintiffs rely on this decision for the proposition that "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."[3] Id. at 1234. That reading of Valentino ignores the fact that the panel went on to say that "[a] class action is the superior method for managing litigation if <u>no realistic alternative exists</u>." Id. at 1234-35 (emphasis added). Plaintiffs have not made this showing. To the contrary, the available evidence--the high value of the individual claims and the existence of individual actions--indicates that realistic alternatives do exist. Such a conclusion is entirely consistent with the holding in Valentino because the Ninth Circuit concluded that the district court abused its discretion in certifying the class where plaintiffs did not make that showing. See id. at 1235.

Accordingly, this factor strongly weighs against class certification.

3. Concentrating Litigation in a Particular Forum

The third factor analyzes the desirability or undesirability of concentrating litigation in this forum. Fed.

---

[3] Even if a class action would save resources by preventing similar issues from being litigated repeatedly, that benefit is outweighed by the diverging interests of different putative class members and the other individualized considerations that would influence these companies to pursue an action.

14

R. Civ. P. 23(b)(3)(C). Under this inquiry, the court considers the choice of law and location of parties, witnesses, and evidence. See Zinser, 253 at 1191.

The fact that all remaining claims are brought under California law weighs in favor of a California federal court adjudicating the dispute. See 2 Newberg on Class Actions § 4:75 (5th ed.) ("[C]hoice of law concerns need not doom class certification . . . if one state's law can apply to the whole class."). A statewide class, however, could be inconvenient for putative class members located far from this court. See Alakozai v. Chase Inv. Servs. Corp., No. CV 11-09178 SJO JCX, 2014 WL 5660697, at *19 (C.D. Cal. Oct. 6, 2014) (reaching the same conclusion). Evidence related to the putative class members' purchasing decisions would be located throughout the state. Additionally, concentrating litigation in this court would automatically select federal court as the preferred forum for all class members. The individual claims already brought do not indicate such a uniform preference as actions have been brought before the Commissioner, in arbitration, and in state courts in dozens of counties throughout California. While putative class members could always opt out if they do not prefer this forum, that option presents manageability concerns discussed below.

Accordingly, this factor slightly weighs against class certification.

4. Manageability

The fourth factor assesses "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Under this factor, the court weighs the

benefits of considering common issues together against the complexities of class action treatment. Zinser, 253 F.3d at 1192. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" Id. (citations omitted).

Assuming without deciding that common issues predominate over plaintiffs' claims, a class action would be manageable insofar as the court would be able to resolve all relevant issues without needing to conduct complicated individualized inquiries. Even so, the court worries that certification may create manageability concerns with respect to already pending litigation. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164 (1974) ("Commonly referred to as 'manageability,' this consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."). If other actions must be enjoined, the court would have to determine the extent to which this action overlaps and takes precedence over those matters. Relatedly, because these other actions involve a variety of different claims in different forums, the parties would have to formulate class notice that accounts for the fact that there may not be complete overlap between this lawsuit and those other actions. The Advisory Committee has made clear that it is already difficult enough to provide accurate and easily understood information about class actions given the factual uncertainty, legal complexity, and the complication of the class action procedure. See Fed. R. Civ. P. 23 Advisory Committee's

16

Note (2003). These difficulties would only be magnified where many similar actions have already concluded and others have progressed substantially. See Erlandson v. ConocoPhillips Co., No. 09-99-DRH, 2010 WL 4292827, at *3 (S.D. Ill. Oct. 21, 2010) (finding class action was not superior way to resolve claims where other pending cases had "progressed substantially, with extensive discovery and the filing of dispositive motions.").

Accordingly, this factor and all the "superiority" factors considered together weigh against class certification.

Since a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy, the court will deny plaintiffs' motion for class certification.[4]

### III. Motion to Strike

Defendants also filed a Motion to Strike Plaintiffs' Reply Memorandum for the failure to reply in strict reply. (Shasta Docket No. 111; Pet Food Docket No. 112.) Defendants argue that plaintiffs have misrepresented the record and that the scope of the reply exceeds the scope of the original motion and opposition.

Incident to its power to control its docket, the court may properly strike documents. See Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404-05 (9th Cir. 2010). Nevertheless, "[m]otions to strike are disfavored and infrequently granted." Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (Wanger, J.). The court may determine on its own the

---

[4] Because the superiority inquiry is dispositive, the court does not consider the other relevant factors under Rule 23(a) and Rule 23(b)(3).

17

accuracy of plaintiffs' representations and whether the reply exceeds the scope of original motion and opposition. To the extent defendants' arguments in favor of this motion bear upon class certification, they have been addressed. Striking plaintiffs' reply in its entirety, however, would be "markedly disproportional" to any offense committed. See Burke v. Enenoh, No. 1:10-CV-01584-LJO, 2013 WL 1915868, at *2 (E.D. Cal. May 8, 2013) (reaching the same conclusion). Accordingly, the court will deny defendants' motion to strike.

IV. Requests to Seal and Redact Filings

Plaintiffs and defendants submitted separate requests to seal documents and redact filings (Shasta Docket Nos. 95, 100, 106 & 110; Pet Food Docket Nos. 103, 107 & 111) filed in connection with their respective briefings on plaintiffs' motion for class certification (Shasta Docket Nos. 94, 105 & 109). The parties maintain that these documents and redactions are covered by their protective order (Pet Food Docket Nos. 47 & 48), and contain confidential, proprietary, and commercially sensitive information that could be harmful to either Applied, plaintiffs, and/or non-parties if publicly disclosed. The court has not relied on as part of its order any of the documents the parties have requested to seal. Similarly, the court has not relied on or cited any redacted portions of plaintiffs' briefing. Accordingly, the court will deny the requests to seal documents and redact filings as moot.

V. Conclusion

IT IS THEREFORE ORDERED that plaintiffs' Motion for Class Certification (Shasta Docket No. 93; Pet Food Docket No.

```
 1 | 101) be, and the same hereby is, DENIED.
 2 |         IT IS FURTHER ORDERED that defendants' Motion to Strike
 3 | Plaintiffs' Reply Memorandum (Shasta Docket No. 111; Pet Food
 4 | Docket No. 112) be, and the same hereby is, DENIED.
 5 |         IT IS FUTHER ORDERED that Plaintiffs' and Defendants'
 6 | Requests to Seal Documents and Redact Filings (Shasta Docket Nos.
 7 | 95, 100, 106 & 110; Pet Food Docket Nos. 103, 107 & 111) be, and
 8 | the same hereby are, DENIED AS MOOT.
 9 | Dated:  January 28, 2019
```

/s/ William B. Shubb
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE