UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHASTA LINEN SUPPLY, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED UNDERWRITERS, INC.; APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC.; CALIFORNIA INSURANCE COMPANY; and APPLIED RISK SERVICES, INC.,<br><br>Defendants. | No. 2:16-cv-158 WBS AC |
| PET FOOD EXPRESS LTD, and ALPHA POLISHING, INC. d/b/a GENERAL PLATING CO., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLIED UNERWRITERS, INC.; APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC.; CALIFORNIA INSURANCE COMPANY, | No. 2:16-cv-1211 WBS AC<br><br>ORDER |

1

| 1 | INC., and APPLIED RISK |
| 2 | SERVICES, INC., |
| 3 | Defendants. |

1  INC., and APPLIED RISK
   SERVICES, INC.,
2
3              Defendants.
4                         ----oo0oo----
5         Plaintiffs Shasta Linen Supply, Inc. ("Shasta Linen"),
6  Pet Food Express Ltd. ("Pet Food"), and Alpha Polishing, Inc.
7  ("Alpha Polishing") initiated these representative actions
8  against Applied Underwriters, Inc. ("Applied"); Applied
9  Underwriters Captive Risk Assurance, Inc. ("AUCRA"); Applied Risk
10 Services, Inc. ("ARS") and California Insurance Company, Inc.
11 ("CIC"), alleging that defendants fraudulently marketed and sold
12 workers' compensation insurance programs to California employers
13 in violation of state and federal law.  After consolidating the
14 two actions for pre-trial purposes only, the court denied
15 plaintiffs' motion for class certification.  (Shasta Linen Docket
16 No. 116; Pet Food Docket No. 116.)  Plaintiffs then filed an ex
17 parte application requesting a status conference.  (Shasta Linen
18 Docket No. 118; Pet Food Docket No. 120.)
19        On April 15, 2019, the court held a status conference,
20 which addressed the following issues: (1) whether plaintiff Alpha
21 Polishing should be granted leave to file a renewed motion for
22 class certification; (2) whether plaintiffs should be allowed to
23 communicate with putative class members to develop additional
24 evidence in support of such a motion; (3) possible modifications
25 to the scheduling order; (4) the possibility of separate trials;
26 and (5) whether the court should set a settlement conference.
27 (Shasta Linen Docket No. 123; Pet Food Docket No. 127.)  The
28

court issues this order pursuant to the discussion with the parties at the status conference.

Alpha Polishing argues that the court should allow a renewed motion for class certification under Federal Rule of Civil Procedure 23 ("Rule 23") because it has proposed a narrower class definition that it believes resolves many of the court's concerns regarding certification. (See Joint Status Report Ex. 1 at 3 (Shasta Linen Docket No. 122-1; Pet Food Docket No. 126-1).) Alpha Polishing's newly proposed class would consist of all California participants in defendants' insurance programs that paid more under defendants' Reinsurance Participation Agreement than they would have under guaranteed cost workers' compensation insurance policies issued by California Insurance Company. (Id.) All California participants in defendants' programs who were ever involved in any other litigation, arbitration, or administrative proceedings with defendants would be excluded from the class. Alpha Polishing would seek class certification only on its claim under the unlawful prong of California's Unfair Competition Law. (Id.)

Under Rule 23, district courts have "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." See Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005). While a district court has the flexibility to change its initial certification decision, see Officers for Justice v. Civil Service Commission, 688 F.2d 615, 633 (9th Cir. 1982), courts often consider whether arguments

raised in favor of a renewed motion for class certification could have been "raised earlier in the litigation." See English v. Apple Inc, No. 14-CV-01619-WHO, 2016 WL 1108929, at *2 (N.D. Cal. Mar. 22, 2016) (citations omitted); see also 3 Newberg on Class Actions § 7:35 (5th ed.) (explaining that courts are reluctant to allow parties to have a "second bite at the apple" on class certification in order to incentivize parties "to put their best foot forward at the outset" and "avoid[] costly delay to the proceedings").

Alpha Polishing has not provided the court with any explanation for why it could not have pursued this narrowed class definition in the initial motion for class certification. Plaintiffs are pursuing certification in their New York putative class action of essentially the same class as the new one it now seeks to certify in this case, albeit under the state law of a different jurisdiction. See Am. Class Action Compl., Nat'l Convention Servs., LLC v. Applied Underwriters, Inc., No. 1:15-CV-07063, Docket No. 51 at ¶ 126 (S.D.N.Y.). The court can only assume that Alpha Polishing made a tactical decision to initially proceed with a more broadly defined class. However, the court will not provide Alpha Polishing with leave to file a renewed motion for class certification, where the motion is simply an attempt to revisit this unsuccessful tactical decision. See Gustafson v. BAC Home Loans Servicing, LP, No. SACV11915JLSANX, 2014 WL 10988335, at *2 (C.D. Cal. Feb. 5, 2014). Allowing Alpha Polishing leave to bring arguments they could have raised earlier would place an undue burden on defendants and waste the court's limited resources. See id.

Moreover, the newly proposed class does not resolve the court's concerns identified in the prior order denying class certification. In that prior order, the court denied plaintiffs' motion for class certification on superiority grounds under Rule 23(b)(3). (Shasta Linen Docket No. 116; Pet Food Docket No. 116.) The court found, in part, that each class member had a significant interest in controlling its own litigation due to the large damages at issue in this dispute. (See id. at 8-10.) That finding remains the same, even in the context of this newly proposed class. At the status conference, Alpha Polishing's counsel maintained that there are approximately 232 putative members in this class. Of those 232 putative class members, 85 participants would have damages under $25,000 and the rest would have high value claims.[1]

Where over 60% of potential class members have a significant monetary interest in controlling their individual actions, a class action is not a superior means of resolving this dispute. See Nguyen v. BDO Seidman, LLP, No. SACV-07-01352-JVS, 2009 WL 7742532, at *8 (C.D. Cal. July 6, 2009) (reaching a similar conclusion). The court is also not convinced that $25,000 qualifies as the threshold for where recovery would be so small that it would not provide an incentive for individual parties to bring their own actions. Alpha Polishing provides the court with no authority in support of this assertion.

Lastly, the court believes that this newly defined

---

[1] Defendants appropriately point out that Alpha Polishing has not provided the court with any evidence for how it determined the size of the putative class and the members' likely damages.

5

class presents many of the same manageability concerns that the court confronted in its previous order. (See Shasta Linen Docket No. 116 at 16-17.) This newly proposed class definition excludes all putative members who have pursued individual actions, even those with claims outside of the scope of the proposed class. The court would still have to determine which class members are then excluded from the present action and craft an accurate and appropriate class notice taking those findings into account. Further, the existence of these other actions would still remain a relevant factor in that there is still a risk that this putative class action could result in a disposition inconsistent with those other actions. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1191 (9th Cir. 2001) (holding that the risk of inconsistent adjudications weighs against certifying a class).

IT IS THEREFORE ORDERED that Alpha Polishing's Request for Leave to File a Renewed Motion for Class Certification be, and the same hereby is, DENIED. Because the court denies Alpha Polishing leave to file a renewed motion for class certification, plaintiffs' request to communicate with putative class members to develop additional evidence in support of this motion be, and the same hereby is, DENIED as MOOT.

IT IS FURTHER ORDERED that the cases captioned Shasta Linen Supply, Inc. v. Applied Underwriters, Inc., Case No. 2:16-cv-00158-WBS-AC and Pet Food Express Ltd. v. Applied Underwriters, Inc., Case No. 2:16-cv-0211-WBS-AC are consolidated for the purposes of trial. Even though some evidence at trial may not be admissible as to all plaintiffs, there is no risk of jury confusion or prejudice because the cases will be tried as a

bench trial.

IT IS FURTHER ORDERED that these actions are referred to the court's Voluntary Dispute Resolution Program ("VDRP"). Within fourteen (14) days of this Order, the parties shall contact the court's VDRP administrator, Sujean Park, at (916) 930-4278 or SPark@caed.uscourts.gov, to start the process of selecting an appropriate neutral. The parties shall carefully review and comply with Local Rule 271, which outlines the specifications and requirements of the VDRP. The parties shall complete the VDRP session no later than June 14, 2019.

Any party that objects to this referral to the VDRP shall file its objections within seven (7) days of this Order. Such objections shall clearly outline why that party believes that the action is not appropriate for referral to the VDRP.

Dated: April 17, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE